Our first case up this morning is in re-marriage of O'Hare and Stratton, so appearance of the appellant Ronald Stratton. Is that pronounced correctly, sir? Okay. And for the appellee Gregory Scott, Mr. Stratton, you may proceed. This is 4-11-11-43, I should mention. You may proceed, sir. May it please the court, my name is Ron Stratton and I am appearing for myself as the respondent. And I bring to this honorable court today two issues, one dealing with arrearages and one dealing with attorney fees. On the issue of arrearages, I believe and I have argued that the August 19, 2009 order is void and unenforceable because it does not comply with statutory compliance in that 750 ILCS 5-507 requires the order to state that the payments for child support may be made through the clerk. Well, even if that's correct, why would that render it void as opposed to simply erroneous? Well, the statute requires that statement to be made in the order and it doesn't say anything. And therefore what? There are lots of errors committed by trial courts all the time. The question is, is it voidable, that is, if raised at the time and pointed out at the trial court level? Would it be error for the court not to correct it as opposed to void, which is a matter of jurisdiction? Would the court have the jurisdiction to enter the order? Well, speaking of jurisdiction, the history on this particular order is the order is essentially a cut and paste from a mediator's letter. And the mediator in this case reported back to the trial court that mediation had failed. Proper objections were made at the time that the order was entered. However, the attorney for the petitioner misled the court to say that it was okay to enter in the August 19th order, which is essentially a cut and paste from the mediator's report. And as the statute states, nothing from the mediator can be placed, can be put into a court order unless it's mutually agreed upon. And it was not mutually agreed upon. The other thing that I've argued for the August 19th order is that the statute 28-20 or slash 20 requires a withholding notice unless there's a written agreement reached. At the time that that order was entered on August 19th, I personally asked the attorney for the petitioner if I should make these payments direct, excuse me, directly. And he said to me, no, I would do a withholding order. And in fact, he did do a withholding order. The June 10th, 2011 order, which brings us here today for arrearages, as you know, 750 ILCS 5 slash 511 requires a filing of a petition to enforce child support. There is no petition filed for arrearages, and therefore, I've argued and asserted that the court does not have jurisdiction. But this court, this 4th District Appellate Court in Azotea, I'm not sure how to pronounce this, A-Z-O-T-E-A, held that the trial court erred in ordering arrearages when the issue was not before the court. And here, in the absence of filing a petition, a rule shall cause- Wasn't the matter argued in the trial court? Wasn't this issue argued in the trial court? That no petition was filed? No, the merits of the petition, the issue that you're complaining was not filed. No, this, if you're speaking to a waiver judge, the court never had jurisdiction over arrearages because no petition was ever filed. What was argued? But you argued the issue. If you said in the trial court, oh, there's no petition, maybe I guess they'd go out and file a new petition. But when you go ahead and argue the merits of the issue, what use is there in filing a petition? On this particular day, there was no argument because, as you know, the petitioner had the burden to present her case on the rule shall cause. And then I testified in my own defense. Before I even had a chance to sit back down to the council table to make a closing argument, make any argument, Judge Nardulli was already lecturing me about how unfair it was that I'm an attorney and I better get ready to pay some fees. So, nevertheless, even if this issue was probably before the court, the evidence shows that the petitioner received a check for $800 for support for the month of August, which covers that period. But as I pointed out in my brief, the first pay period covers the period in which a deduction was made and paid the petitioner for support. That covered the latter half of that period in which the petitioner is claiming her arrearages. And then the $800 that I gave her in the month of August shows compliance with the month of August. So for two reasons. One, the trial court never had jurisdiction over the issue of arrearages because the way you enforce arrearages is by filing a rule. No such rule was ever filed. And so for that reason, I asked the trial court to vacate that order. Secondarily, on attorney fees. Attorney fees were issued because Judge Nardulli said, on the record, in the record for you to read, I think it's so unfair that you're an attorney, you can come in here and represent yourself, and she has to go out and hire an attorney. Well, let's take a step back. Why am I in court? Defending myself. Because the petitioner filed a rule to show cause to have me thrown in jail for taking my daughter to a beauty parlor. The rule to show cause to have me thrown in jail because I enrolled my daughter in private music lessons. The rule to show cause to have me thrown in jail because I enrolled my daughter in school. Who was the primary custodian? Petitioner. What were you doing enrolling her in these? Well, you would think, Judge, that the attorney for the petitioner would ask that question to the petitioner. Because the evidence presented at trial to have me held in contempt for registration was a family night open house card. I filled out an open house card. The final order of dissolution provides that the minor daughter will go to Butler Elementary School unless she otherwise qualifies for IELTS. We knew at the time that she was going to Butler. On the night that I had the physical custody of my daughter, we were in the Washington Park. And another parent and I were talking about schools. And I said, she's going to Butler. Oh, guess what? They're having an open house night tonight. So I took her to the open house night. Now, what about the due diligence of the attorney for the petitioner? Or the lack of the due diligence of the attorney for the petitioner to say to his client, what evidence do you have of registration? So why am I in court as an attorney representing myself? Because number one, why should I go out and hire an attorney and incur fees on this frivolous rule? Now, let me speak to the legal merits of attorney fees. I'm sure everybody is well aware of the Supreme Court case of Bloom. I'm asserting today that the petitioner, the attorney for the petitioner, should have filed his request for attorney fees within 30 days. There's not one petition ever requesting attorney fees. He didn't file it within 30 days, and that's what the statute requires. Moreover, my constitutional rights as a citizen of this nation affords me due process. When the Founding Fathers wrote the Constitution of the United States, when they wrote in there that no citizen shall be deprived of life, liberty, or property without due process of law, they meant it. And they did not mean that it would be okay for an attorney to waltz into court and, by the way, oh, we want to have this issue addressed. Are there sections of the Act that particularly describe or talk about attorney fees? Section 508 of the Illinois Marriage and Dissolution of Marriage Act. Are there two subparagraphs under that? There's more. There's several. There's section A, B, and I believe there's a C if an attorney wants to seek fees from their own client. But number one, no petition was ever filed. Number two, I never had my opportunity to be heard. As the record clearly states, I said with respect to attorney fees, I think it's a waste of time to call an attorney to come up and testify to their affidavit. Do you think that attorney is ever going to say anything contrary to what's in their affidavit? No. All I wanted to do was make an argument on the reasonableness of fees, particularly with respect to the fact that I'm being called into court and asked to be thrown in jail for taking my daughter to music lessons because, heaven forbid, I didn't get the custodial parent's permission. Are you kidding me? And she racks up $10,000 in fees and Judge Narduli has the wherewithal to say, Oh, Stratton, I think it is so unfair. You're an attorney. You can come in here and represent yourself. You better be prepared to pay some fees. Really? Well, what about the legal rationale for the fees? Because I seem to recall that the case law authority, and the statute requires a few things, and none of them say anything about how unfair it is that you're an attorney. Now, Mr. Scott, in his reply brief, stated he's seeking fees under 508B. Well, if there were a petition filed for fees, we might know that. If Judge Narduli may have made a reasoned, articulated decision with respect to fees, maybe we might know that. But if he wants to say they're Section B, fine, we'll go with Section B. Section B provides, in every proceeding for the enforcement of an order. What order was necessary to be enforced? The final order of dissolution that somehow magically provides that the noncustodial parent has to get permission for the things that they do with their kids on their time? Then Judge Narduli goes on in an order to say, Well, we held you in contempt for violating the order about Friday visitation. Really? Let me tell you a story about Friday visitation. Did the court find you in contempt for that? Yes. Well, then what's, is that before us on appeal, that finding? There was no finding. I just asked you if the court did, you said yes. Well, they, but, I'm sorry, but what I'm referring to is, first I want to give you the history. Well, how much is the answer to my question? Did the court find you in contempt for, was there a finding made? A finding was made, and it's an erroneous finding, and it's a finding that's not well-grounded in fact, and it's not well-grounded in the record, and it's not well-grounded in law. So if we disagree with that, then is there any issue about the attorney fees and the 508B? Yes. Why? 508B requires an enforcement of an order. The Friday's contempt was not pursuant to enforcement of an order. In fact, there's no order in there that, the contempt says, I'm holding you in contempt because you violated the order that says you can't pick up your daughter on Friday morning and take her to work. Well, where is it in the record that there's an order that says that the noncustodial parent can't pick up the child and take her to work? Moreover, in that same order where the judge held me in contempt for that, he goes on to say, oh, by the way, you can have Friday visitation, and with this entitlement, you can take her to work. Well, if you're going to hold somebody in contempt for violating a court order, then now you're going to give them that right? But the salient point here is there's no court order that says you can't take the child to work, and if there's no court order that says that, how can you be in contempt? How old are you? Forty-nine. How old is your next wife? Forty-three, forty-four, I believe. How old is the child? She'll be six next month. So you're all about the same, the wife being six years old? All of us? Yes. Remember, it was the petitioner that filed the frivolous plea, not I. And 508B says it has to be the enforcement of a court order. There's no court order that supports the contempt finding, number one. Number two, 508B says when the court finds failure to comply with your order, he has to make a finding that it was without compelling cause or justification. No such finding was ever made. The court, 508B goes on to say, the court shall order the party against whom the proceeding is brought to pay the fees of the prevailing party. So while the second rule does show cause for the beauty parlor, the enrollment of private music lessons and registration, I prevailed. She didn't prevail. So how can you award attorney fees when she didn't prevail? 508B says you have to prevail. Finally, 508B goes on to say you can get attorney fees for harassment. Well, I didn't file the petition for a rule. I'm the one that's being harassed here. You think when a client comes to me and says I want to have my former spouse held in contempt of court  I think a diligent attorney would say to their client, he has every right to do that, ma'am. And when the client comes to me and says, well, he enrolled her in music lessons. He didn't get my permission. Well, a diligent attorney would say, I think he has the right to do that, ma'am. Well, I'm a custodial parent. I have every right to make the decisions regarding education. And he registered in school. When did he do this? In January. You think an attorney might figure out that no school in this district registers kids in January, but to the extent they want to give their client the benefit of the doubt, they might say, well, what evidence do you have? Can you go to the school and get a copy of the registration forms? No, because they don't exist. But that doesn't stop Mr. Scott from filing a petition and harassing me and hauling me into court. So with respect to the attorney fees, no. No. The petitioner is solely responsible for the fees, and she should be solely responsible for the fees. Did you have her haircut? The child's haircut? It was styled. Isn't that something that the primary custodian ought to take care of instead of you? Well, if you look at the record, Judge, you'll see a picture of how my daughter looks when I pick her up. And she asked me on that day that she wanted to do something with her hair and look like a princess, so I took her over there to the beauty parlor, and they styled it for her. Did you speak badly about Reese's boyfriend? No, I didn't. And there was no evidence brought on that issue. Did you enroll the girl in drum lessons? I enrolled her in private music lessons that occurred solely on my time. That's not your call as non-custodial parent, is it? Yeah, it's my call. I mean, it's a private music lesson. Why can I not bring in somebody to show her to develop her talents? Because you're not the primary custodian. The primary custodian decides issues like where the kid goes to school, who the doctor is, things like that. If you have a complaint about it, you have to work it out with the primary custodian. What if I gave her private music lessons? What if my neighbor, who's a drummer, came over and said, I'll show you a few things? You're telling me that you have the right to do all these things. I know the trial court found that both parties were litigious here, that both parties were acting in bad faith. But it sounds to me like when you say the things you were doing, you were trying to interfere with the actions of the primary custodian. No. There has to be somebody who makes the decisions here, and it's not you. It's the primary custodian. The statute specifically on education, education is a public education. That means going to school. That means going down to Butler Elementary School or a middle school or Springfield High School or a private college. That does not include, there's no legal authority to suggest that a noncustodial parent cannot engage in an activity such as private music lessons or taking her to a beauty parlor to have her hair made up like a princess. When the trial judge looks at these things, he has to decide, are you really trying to act in the best interest of your child, or are you trying to cause trouble in this case? How would it be causing trouble? I'm amazed at this argument. You are not arguing here as an attorney. You're expressing your concern as a... I'm expressing my right as a parent to take my daughter to a beauty parlor and have her hair styled. And if you want to curtail it so narrowly, what rights does a noncustodial parent have to... Here's the problem with your argument. We're on the appellate court here. But cumulatively, we have about, I think well in excess of 40 years experience as trial judges. We've been in this kind of a case with litigious folks in divorce matters who are sputtering back and forth at each other. And we know what a difficult spot that is for the trial judge to deal with. We also know of Judge Narduli, who is a judge who has lots of cases that have come before this court. Speaking for myself, his reputation is excellent. He's one of the very best in the entire 4th District, particularly in this area. So what you have to demonstrate is that somehow Judge Narduli in this difficult case has just missed the boat entirely. His behavior was not appropriate. His assessment, his discretionary calls were unreasonable. And this record doesn't seem to support that. Well, Your Honor, I disagree. First off, he had no jurisdiction to entertain the issue of arrearages, number one. And number two, with respect to attorney fees, it's very clear. Strat, it's unfair that you're an attorney and you can represent yourself and she has to hire an attorney. But she hired an attorney to file a frivolous rule. You want to talk about litigious Greg Scott? How many cases have you had in your 40-year experience where Greg Scott has brought you here? We have a lot of Mr. Scott's cases come to think of it. They're too vast. All I'm saying is, did Judge Narduli miss the boat? Yeah, he missed the boat. And it's on the record he ordered fees because he thought it was unfair that I had to come in. If I had a choice, I wouldn't want to be going to court on that. You want litigious, who's litigious here? Petitioner. And for these reasons, I ask that you vacate the trial court. Thank you, counsel. Mr. Scott? May it please the court. Counsel? Counsel. Was there a petition filed, Mr. Scott? No. Your Honor, there was not. It was brought up in previous petitions. I, quite frankly, thought it was in the second petition for rule. And it was discussed at pretrial conferences and at the beginning of the proceedings. The court indicated, and it's in the record, and I think I cited you to it, that it would be addressing the issue of the arrearage, at which time we proceeded to hearing. Mr. Stratt raised no objection to proceeding to hearing on the arrearage. And, in fact, Mr. Stratt brought with him exhibits, which he even attaches to his brief, that he sought to introduce with this claim that he had paid before the order was entered and all that other business that he put in his. And we'll get to that on the merits when we get to that. But he clearly knew we were dealing with fees. The issue was before the court for months. And he shows up, and then he tries the case. Did he raise any question about the absence of a petition at the trial? No. And what he did is he presents evidence. He admits that there was an order entered on August 19th that requires him to pay August 23rd and every two weeks thereafter. He admits that he didn't pay the August 23rd payment. I mean, it's not ambiguous. Look at the order. It says August 23rd, you pay $699.16. Never paid it. He admits he didn't pay it. The next two weeks later, September 6th, in this testimony, he admits, I never paid it. So then he gets an order for withholding because of issue one. If you look at the court's order that Judge Childress presented at that time. Judge Childress, we wrote on there, order for withholding the issue, and it's handwritten by the judge on there if you look at the section on the payment of child support. And there's always a timeline. This business of 507 making this order void, I think I've never heard that argument before. Personally, I don't think it has any legal credibility, and he cites no authority for that. What happens in a lot of cases is that courts will, because clerks don't know how to process child support payments, they'll put it in the docket entry until this order for withholding starts kicking in, paid through the clerk. Didn't happen here. But he's still obligated under the court order. And then he comes into court and he presents evidence, I paid you before the court order was in, which Judge Narduli properly said that doesn't make any difference because that was before. And if you look at this court order of August, it says everything on temporary support before the time I ruled is reserved for final disposition at the trial. Final trial. Then he says, I had a withholding on September 18th, not in the record, by the way. No evidence of that, other than his statement is brief. But there is in the evidence that the first payment made was September of 24 after his two payments were due. So that covered his September 20th payment. He never paid the first two payments. As I pointed out to the court, not only did he waive the issue by going to court, presenting evidence, testifying, cross-examining my client, and without limitation. So then he loses. So then he says, wait a minute, my rights have been violated. What are his rights? Notice of the proceedings, which he obviously had because he was prepared with evidence, and the ability to present his case, which he did. And then he comes back and says, oh, no, no, no, no. The judge should have not had, didn't have jurisdiction over the arrearage. Quite frankly, it was a benefit for him to be able to come into court and say something. It's a court's jurisdiction. Every child's support becomes a judgment. The court retains jurisdiction to enforce that judgment. That judgment can be enforced by garnishment of his bank account, garnishment of his wages, or an amended order for withholding. With him, can't do a thing. Except coming in and saying, to strike the garnishment. What did Judge Narduli say with regard to the question, though, I wasn't given notice? He never even brought that up. Oh. It was never brought up in the trial. Oh, I thought you were talking about it at the trial court. You mean it's just brought up here? Yeah. So that's why I say waiver is where, you know, he brought it up, I think, in the motion for reconsideration. Judge Narduli said you went to trial on it. And he denied that. Well, that was brought up at least at that point. Sure. The motion for reconsideration, I think, is in there, too. But clearly, he was in arrears in child support. And it's $1,399.38, or $0.32, that he's arguing about. And we go to trial and now to the appellate court on this issue, which takes me to the area of fees. And, Judge, I do want to correct a couple of things that Mr. Stratz said, Justice Cook. My client has sole custody. It's not a joint custody arrangement. Additionally, the court order says the child will go to the school that my It doesn't say the child will go to Butler. You should look at the judgment because it's specific. And we've litigated that with Mr. Stratz. The court has said, no, it is wherever she lives. And when he did this with Butler, my client didn't live in Butler. But I'm not going to get into the factual issues of whether he was in contempt or not. We've got to look at the issue of whether he says there was any petition for fees. What about when two parties are litigating and one of them is a lawyer, does the non-lawyer automatically get attorney's fees? No. It's a discretionary matter. And, in fact, throughout his entire brief, not one time does he make any allegations of abuse of discretion, which is your standard of review. So there's no even mention of that. But there is no abuse of discretion. And if the court would look at, I apologize, the start of my brief refers the court to the beginning of the proceedings with regard to fees. And he even attaches it as an addendum to the documents in the appendix. And the court was apprised, Mr. Stratz was apprised, that we had petitions for fees on file since January of 2010 that had never been ruled on by the court. These fees were associated with, and I've laid them out in the three pages of my brief, ever since we filed the petition. We came to court. We agree on everything. We present a judgment. Mr. Stratz refuses to allow his attorney to enter the judgment. So we go to court on that. During that process, Mr. Stratz attempts to get rid of his then-attorney, Ms. Jenkins, and goes back and talks to Judge Childress by himself, without notice to me or Ms. Jenkins. And Judge Childress then has to recuse himself. There was an order entered restraining Mr. Stratz from some of his actions before Judge Childress recused himself. But because of his actions, Judge Childress would no longer hear the case. All this time, my client is burning fees. So finally, our petition for entry of judgment is heard, and the judge enters it in March. I apologize. But at any rate, all this time, we've had fee petitions. Then he engages in more litigious actions. We have more fee petitions. None of them ruled on. So what the judge did is look over this whole body of a year and a half, and he says, hey, there's $11,000. You have to pay $5,000. Look at his comments to Mr. Stratz. He said, Mr. Stratz, you have been litigious, is what he said. He said the same thing about your client, didn't he? He did. And what he said was, I'm going to share the wealth on this cost, which is what he did. There were $11,000 owed. My client got six of it. Mr. Stratz had to pay five of it. And the court was there for all this whole year of petitions and more petitions and all these rules, and the court did find him in contempt. And specifically, when he came back to the court on a motion for reconsideration, in that order, the judge says, hey, Mr. Stratz, we're not under 508A. Hey, Mr. Stratz, we're under 508B. And 508B does allow a court to make a determination that, based upon the body of what's in front of it, that one party ought to pay fees for being what they call litigious, as well as for contempt. And he did find him in contempt in February of 2011, which was never appealed. What was that for? That was for a time when he would take the child and take the child for, there was this lunch thing that got into a lot of litigation between these parties, but he would remove the child from school. And then he would take the child supposedly for lunch. And the court told him he could do that if he didn't go to work. But then what happened was he started taking the child to work over this lunch, and we proved it, and the court held him in contempt. So Mr. Stratz is held in contempt for violation of a court order. And Mr. Stratz, I agree with Justice Cook, that a custodial parent makes decisions that Mr. Stratz is doing. In the second petition, he claims that was groundless. The judge didn't hold him in contempt, but he certainly lectured him as to activities and things that shouldn't be going on between parents. And a person who's a non-custodial parent that signs a kid up for lessons of any kind and doesn't tell a custodial parent, and the child comes home and goes, oh, Mom, I love drums. Really? That's not the way the statute is set up. That's not the way custody and visitation is set up. And I believe that under the statute, that those kind of decisions are made by the custodial parent. But the whole body of the case was in front of Judge Narduli. And we had motions to enforce a mediation, to vacate a mediation statement by the mediator that there was no agreement reached. And we had endless hearings that the court had petitions for fees on. Never ruled on them until the end. Now, he says that you have to file a separate petition even though you have petitions on file for fees. I don't think that's what the statute says. I don't think that's what Bloom says. Historically, people ask for fees throughout the litigation. And then a court will rule on it when everything is done. And that's what happened here. We had petitions for fees for a year that were pending with the judge. And I don't think that's out of the ordinary. I think most courts do that. If you want to file a separate petition at the end of all hearings, and you haven't already petitioned, you do have to do that within 30 days. But we were already on file, and the statute says if it's before the judgment, you can file it. And we did. It's been on file since actually January of 2010 until the judge finally ruled. Mr. Stratt, the appellant here, do you appeal to any aspect of this order? No. We would ask the court to affirm the order, and we thank you for your time. Thank you, Mr. Scott. Mr. Stratt, any rebuttal, sir? Let me clarify a couple of points. Did Mr. Scott waive his petition for fees? Because he just stated that he had several petitions for fees all throughout this litigation for which should be ruled on at the conclusion of the case. The final order of dissolution was entered March 17, 2009. Was there any ruling? Did he waive the fees by not pursuing it now until 2011? He didn't have any. He just made the representation to this court that he had several petitions for fees on file. There's no petitions for fees on file. Secondarily, let me explain to you about the Friday visitation, which Mr. Scott just said that I violated the court order because the contempt stems from this lunch. And he also stated that I refused to have the final order of dissolution entered.  It was not consistent with the trial transcript at which the settlement negotiations took place. And I raised all these errors, and the petitioner refused to abide by any of them because all but a couple of them benefited her. So I said to my then-attorney, Diana Cherry, well, if they want to play that game, the Friday pickup time is, there's a mistake with the Friday pickup time. So she filed a petition to clarify with Judge Narduli, who wrote an order. Scott can pick up the minor child any time on Friday, whenever he gets off work, regardless of time. I mean, how vague is that? So I would pick up my daughter at 9 o'clock on a Friday morning. On a Friday morning, I'd pick her up at 9 o'clock. Now, on one occasion, I took my daughter over to my office because my office mates had printed out all the pictures from Disney, our Disney trip, and posted them on my door. So I took my daughter over to work to show her that. The petitioner followed me and took pictures of my car. Then she filed a rule, and it was regarding lunches, because she didn't want me to have lunch anymore because I just wasn't working out for her. And so the contempt is not rooted in any rule. It's just something that Narduli decided to do. And what's inconceivable about it is he says, I violated a court order, there's no court order that says that I can pick up my daughter and not take her to work. But then he goes on to say that that's okay, you can do that. I mean, that doesn't seem to make sense to me. I have nothing further, and I do appreciate your time. Thank you, counsel. Thank you, Mr. President. Goodbye.